Good morning. Before we begin the arguments for this morning, I have the pleasure of making a motion, and for that purpose, I will turn over the presiding gavel to my colleague, Judge Dyke. Thank you, Judge Lynn. We'll receive your motion. Well, it's my pleasure to move the admission this morning of one of my law clerks, who has served with distinction in my chambers for the past 15 months, and he's done an outstanding job. Louis Tomprose has been a great addition to my chambers. His work is characterized by great skill, great diligence, great judgment, and I'm really delighted to have the opportunity to move his admission, and proves once again that even those with English degrees can serve a useful function. Yes, they can write a sentence correctly. And with that, I will formally move the admission of Louis W. Tomprose, who is a member of the bar in good standing of the highest court of Massachusetts. I have knowledge of his credentials, and I'm satisfied that he possesses the necessary qualifications. Absolutely. Mr. Tomprose, welcome to the bar of this court. As a former English major myself, I'd like to see more English majors. Very nice to have you. The motion is granted. Mr. Judge, in your right hand, do you swear or affirm that you will comport yourself, an attorney and counsel of this court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. Congratulations, and welcome to the bar of the United States Court of Appeals for the Federal Circuit. Congratulations. Welcome to the bar, and I look forward to seeing you at the lectern shortly, making the same kinds of outstanding arguments we're about to hear. With that, we will begin. We have six cases on the docket for today. Two cases are submitted on the briefs, and four cases will be argued. Before we start the arguments, I would just note for the attorneys who are here who will be arguing today, I would appreciate it when you come to the lectern, when your time comes, that you enter an appearance so that those who hear the oral argument will have the benefit of knowing who you are and who you represent. First case is appeal number 2008-3112, Weed v. SSA. Counsel? Good morning, Your Honors. My name is Morris E. Fisher, and I am the attorney for the petitioner, Albert C. Weed, the gentleman over there, who is also a member of this court. We don't have a final judgment here, do we? In the sense that all the board has decided is a question of liquidated damages, and there isn't any resolution of the question of entitlement to actual damages. So, until Mr. Weed is successful on the reconstruction, we don't know whether he's going to get anything at all. I think that if the violation was willful, that's a different standard. Well, it is a different standard, but I don't see how he can be successful with respect to his claim to liquidated damages on grounds of willfulness unless it is actually determined that he would have been hired. Isn't that correct? A determination which has not been made yet. I must confess that it wasn't one of the arguments I had prepared for today. But just to follow up on Judge Dykes' points, I mean, the AJ here decided that even though she found it was willful, that any entitlement to liquidated damages would be contingent on his success in the restructured hire, correct? Correct. You appeal that to the board, and the board denied that. That's not the basis of any appeal before us. So that is the law of this case. And given that, then I think it leads to Judge Dykes' point that if he loses on the restructuring, this issue is irrelevant, moot. The issue of whether any entitlement to damages, whether willful or not, is moot, right? OK. So and the court's saying that there has not been an entitlement? There's not been a… There hasn't been an adjudication on the restructuring. And therefore, the entire question of damages, including willful damages, may be irrelevant, may be premature. There is a non-presidential decision of this court in Patterson in 2004 which actually holds that. Oh, I think the AJA, did the AJA defer the damages issue until the Federal Circuit decides the intent? Oh, I mean, that's what renders it non-final. So the administrative judge shouldn't have done that? They can do that, but it's not a final judgment until the decision is made. We have this issue in patent cases all the time where they defer questions of validity. It's not a final judgment as long as those questions haven't been resolved. So what's the remedy for Mr. Weed here? He has to go back to the AJA and tell them that they must issue a final order? That would usually be what he has to do, is to wait until the reconstruction is resolved. And if then in the question of the reconstruction, liquidated damages aren't awarded, then he can appeal if he's successful in the reconstruction. How does he do that, though? You might have argued that there was some basis for us to address this issue if he was somehow going to be foreclosed from litigating the issue, but you didn't argue that. Is it your fear that you will be foreclosed? Let's assume he, in the restructuring, he does get, it is determined that he was entitled to the job. Then your concern would be that, what, the clock would have run out on your appealing the question of whether or not there was willfulness? Yeah. If he gets the job, then the issue is willfulness. So then what happens then? He has to appeal again based on this decision that was issued a year or whenever that would be? Yeah, but that's not unusual. You often have interim decisions in cases that aren't appealable. That's the whole point of the final judgment rule. They have to wait until it's all over with before you can appeal. And the question is not really what's he to do then. The question is whether he is going to somehow be foreclosed from making that opportunity if and when this does become final and relevant. I don't know that there's been anything in the record that he's going to be foreclosed. Under the time constraints to appeal to the Federal Circuit, I guess theoretically he gets an order and he'd have to come back here. I don't know really how to answer that. I could take another look on rebuttal, save my time and come back. Why don't we do that? Let's reserve your time. Let's hear from the government. Okay. May it please the Court. Your Honor, it's Joseph Ashman on behalf of the Social Security Administration. And to address the Court's first point raised with the appellant, the government would agree that that is a potential issue in this case, that there has not been a final judgment. Why didn't you tell us about it? We took the position that, not to make the appellant's arguments on his behalf, but that the willfulness could be separate. It's not making arguments on behalf of the appellant. It's a question of our jurisdiction, which is an issue in every case. The structure of the VOA... We rely on the government to help us with these things. We shouldn't have to figure it out on our own. The government sees the whole run of these cases. It's familiar with the final judgment rule. We rely on you to tell us about these things. And you didn't. Yes, Your Honor. The way we looked at the statute, the VOA, Section 3330C, is that it was a bifurcated punitive remedy statute, in that willfulness was not potentially connected to the first tier of liability, which is compensation for wages and back pay. And the administrative judge found, under the first tier of liability, that before a determination of wages and benefits could be made, there had to be a reconstruction. But we didn't feel that was necessarily foreclosed, the willfulness argument, because the willfulness argument focused on the agency's conduct, not necessarily what the result to the petitioner would be. But to agree, if and when they do the reconstruction, if the determination is made that he's not going to get the job, then this willfulness issue goes down and never becomes an issue, right? Well, I think when you, Your Honor, when you look at punitive remedies under the statute, it's focusing on the agency's conduct, not necessarily what's equitable to the veteran in this case. That's not the way the board's construed the statute. Is the government's position that he's going to get, I mean, if we were to reverse, for instance, if we can conclude that this conduct was willful, that he's going to get the back pay, liquidated damages, notwithstanding what happens in the reconstruction? Not necessarily, Your Honor. The reconstruction is certainly relevant to determining what compensation would be available if the petitioner would have gotten the job to begin with. But at least there's an open question about whether or not he would or would not have gotten the job, correct? Yes, Your Honor. And if the ultimate conclusion is that he would not have gotten the job in any event, then the government's position is, is it not, that he's not going to get any liquidated damages, no matter what we say or do here on the issue of willfulness? We would certainly agree with that position, Your Honor. But the way we brief the argument or brief the case was that assuming that the willfulness was bifurcated from the first tier of the statute of just corrective action, that the willfulness focused on the agency's conduct. It's a punitive remedy. So the punitive remedy is applied against the conduct and not necessarily against making the petitioner whole. It's to prevent future conduct by the agency. So we felt that there could be a distinction, and that is the way we brief the case, Your Honor. Well, is your position that he gets the liquidated damages even if he wasn't going to get the job? Your Honor, I wouldn't want to take that position now because, as I said, we didn't brief that aspect of the case. I think that would certainly require more development. The A.J. here made his entitlement to liquidated damages dependent on his being entitled to the job, didn't he? The A.J. held that there was a willful violation but determined that first there had to be a determination of whether or not the petitioner got the job. Yeah, he wouldn't be entitled to liquidated damages unless he was entitled to the job, right? But I don't think the A.J. made that decision, Your Honor. I think the A.J. said in the first instance you send it back to the agency to make a new decision on whether or not the petitioner would be hired. I don't think the A.J. specifically said in the event that the petitioner was hired or was not hired, the petitioner, Mr. Week, could still be afforded liquidated damages. I don't believe that was actually the holding. What page is the A.J.'s decision in the appendix? I mean, on page 25, I guess, after she makes all of these conclusions, she says, similarly, I do not award the appellant liquidated damages at this time. Liquidated damages, if any, are tied directly to any back pay awarded as make-home leave. At this point, it is yet to be determined whether the appellant is titled to an appointment, to the position, or whether he is entitled to back pay, and therefore an award of liquidated damages is not appropriate at this time. Is that what you're referring to? Yes, Your Honor. So how does that support what you were telling us? Well, it would support, Your Honor. That would be, the A.J. did conclude that liquidated damages were also dependent on determining whether Mr. Week could be hired in the first instance. Well, on your first point, I think your answer, you were trying to sort of distinguish between a finding of willfulness and the whole issue of liquidated damages. If there's a finding of willfulness but no finding, ultimately, that he would have gotten the job in any event, what happens? I mean, is there any order that goes out that says the agency has been found willful? You know, is there a cease and desist order like the NLRB has orders and then it has remedies? You suggested that sort of it was separate and distinct from the damages, and I'm wondering how so as a practical matter. Well, I think willfulness, because of the intent of what a punitive remedy does, it's to punish the actor, the agency. So it is separate from the first tier of the statute of just compensating and making the veteran whole. So the way we saw it is there was a distinction in how it could be applied, and to Your Honor's question, what the procedure would be, you know, if there was a finding of willfulness but not a conclusion that Mr. Weed was entitled to the position, that's not something we have an answer for right now as far as how the procedure would follow. You know, assuming there would be, if there was an order from this court that there was a willful violation, then the agency would be required, notwithstanding the reconstruction action, to pay liquidated damages. That's your position? It's not something we've briefed, Your Honor. The board, in other cases, has been clear that the entitlement to liquidated damages depends on the right to have the job. Hasn't it said that? I'm not aware of that case, Your Honor, of those cases in which it said that under this statute. I know the administrative judge did, in the first instance, have that holding in her decision, but because the board ultimately reversed the administrative judge, it appeared to be a different situation in that regard. So did the board speak to this at all? Your Honor, the full board affirmed the administrative judge's decision that there was a violation in the first instance and instructed the administrative judge to continue overseeing the enforcement action, but the board did overturn the willfulness finding, the administrative judge's willfulness finding. I don't understand. How could there be a final judgment, even if you are entitled to liquidated damages without regard to reinstatement, which seems to me to be contrary to board authority and contrary to what the A.J. said here, but let's assume that's true for the moment. I still don't understand how there's a final judgment here because you've got two claims together and one of them hasn't been resolved. Your Honor, I think potentially the way the VOA's remedial statute is written, the VOA does not discuss specific veteran's statutes, which statutes come within its purview. So it's written broadly and the first tier of the statute says if there's a violation of a veteran's statute, the agency has to take corrective action. So what the board did in this case, found a violation and they had to determine what does corrective action mean in this case. And so corrective action could lead to back pay and benefits. So the board interpreted, well, in corrective action, before we could get to the question of whether or not back pay and benefits can be awarded, we have to reconstruct the hiring action. The statute does not talk about reconstructing the hiring action. The board interpreted that that's what had to be done in this case before it could answer. The board then ordered the agency to reconstruct the hiring. And it seems to me that until that's resolved, there's an absence of finality, plain and simple. Any argument against that? No, Your Honor. We would not argue against the conclusion that final judgment isn't necessarily in this case. It's surprising and disappointing to me that the fact that this issue on what standard applies in determining willfulness was characterized the board as a question of first impression. And of course, it's in the context of this case where apparently there is an absence of finality. There's been an interlocutory determination. And granted, the appellant didn't bring up the issue of finality, but nonetheless, the significance of the case should have been readily apparent to the government. And it's disappointing that this issue was not addressed. So we're hearing an argument this morning, and both sides are sort of speculating as to where we should go. And, well, that sounds pretty good. That might be good. Yeah, maybe. That's not where we should be. We expect more, particularly from the government. Yes, Your Honor, was there any other further questions? I would just point you to page 26, in addition to what we've already looked at, where the AHA says there is no appropriate relief available unless and until there is a finding as a result of the reconstruction process that the appellant would have been selected, withholding the award of relief until that determination has been made. All right, let's hear from Mr. Fisher. Any comment in rebuttal? Yes, I have one, Your Honor. I think that perhaps the reason my colleague didn't raise this is I would argue there is a final order based on the actual order by the board. On page 8 and 9 of the appendix, where they basically tell the guy, you have 60 days to file with the court, with the U.S. Court of Appeals on this case. And on page 8, he says this is the final decision of the Merit Systems Protection Board. That may be what they said, but that doesn't necessarily make it a final decision. Why not? I mean, let's say Mr. Weed did not appeal. Why not? For the very reasons we've been discussing. Actually, we ask the questions, but the answer to your question is that there are plenty of cases where district courts have said this is a final judgment and we've said you're wrong. It's not. The characterization of the lower tribunal as to the finality of its own judgment is not binding on us. And there's no argument here of waiver. The government has waived this argument by waiving the jurisdictional by not raising it in any pre-appeal motion. Well, you know, waiver is not an issue with respect to whether we have jurisdiction or not. That's a question we have to determine in every case. If we have no jurisdiction, then we shouldn't be here. Yeah, I mean, I'm disappointed as well. I mean, it just seems like the system, you know, owes something better than this. But I know you're not the... Well, I mean, your client may have his day, but the question is when is that day ripe and appropriate for determination? Okay. It seems that this is not that day. Thank you. Okay. All right. We thank counsel. The case is submitted. We'll hear argument next in appeal number two.